LOVINA JENNINGS, Appellant, *v.* ELIZABETH JENNINGS *et al.*, Appellees.

APPEAL FROM ROCK ISLAND.

A testator gave to his wife all his estate, to be disposed of in any way that would best support her for life, but if his sons, John and Thomas, should take care of their mother, they were to have certain lands, but if they failed to support their mother, then she could sell the land, or any part of it, to support herself; but if the sons complied with these conditions, they were to take immediate possession of the land ; there were bequests to other children : *Held,* that the testator intended to charge his entire estate with the support of his widow ; that the question of support was a condition subsequent, the word "comply" being used in the sense of "assent," and when John and Thomas assented, the estate passed to them, burthened with the condition of support of the mother ; and that the widow of John being his heir, and proffering to support the widow, had a right to inherit and possess the estate, and could compel the grantee of the widow to reconvey to her.

THE complainant filed her bill of complaint in the Circuit Court of Rock Island county, in August, 1860, HOWE, Judge, presiding. Defendants appeared and filed a demurrer to the bill, which was sustained, and the bill dismissed at January term, 1861. Complainant excepted to the ruling of the court

in sustaining the demurrer and dismissing the bill, and prayed an appeal to this court.

Complainant's bill sets forth, that she is the widow of John Jennings, who died May 3, 1857, in said Rock Island county; that said John Jennings was a son and heir-at-law of David Jennings, who died January 29, 1856, in said county; that said David Jennings, at the time of his death, was owner in fee simple, of real estate in said county, to wit: One hundred acres on the east end of the south-west quarter of Section 31, Town 18 north, Range 2 east of the 4th principal meridian, in said county, and of other property both real and personal; that Elizabeth Jennings is the widow of said David Jennings; that said David Jennings died testate, leaving a will, made part of the bill of complainant; that said will was filed, proved and recorded in the probate court of said county, February 7, 1856; that by said will the said David Jennings devised unto the said John Jennings the above described real estate, upon the condition that the said John Jennings—together with one Thomas Jennings, who is also a son and heir-at-law of the said David Jennings, and to whom was devised other real estate in said will mentioned—should support and take good care of their mother, the said Elizabeth Jennings, during her lifetime; that upon the death of the said David Jennings, the said John Jennings, by virtue of the said will, entered upon and took possession of the above described real estate, and continued in the peaceable possession thereof till his death aforesaid, and made permanent and valuable improvements thereon by and with the consent of the said Elizabeth Jennings, and from the time of the death of the said David Jennings took good care of the said Elizabeth Jennings, and treated her with great kindness and affection, and furnished her with all the food and raiment that she desired until the time of his death; that there was no issue of the marriage of complainant with the said John Jennings; that by the laws of the State of Illinois, upon the death of the said John Jennings, at least an undivided one-half descended to complainant; that at the time of the death of the said John Jennings, complainant was on a visit to her relatives and friends in the State of Pennsylvania, but upon hearing of the death of her said husband, immediately returned to said Rock Island county, and arrived at her home, the residence of the said John Jennings, within about two weeks after his death; that complainant, immediately upon her return home, in a kind and respectful manner, offered to take good care of the said Elizabeth Jennings during her lifetime, in the same manner and style that her husband had previously done, and that she was ready, able and willing so to do.

That said John Jennings died intestate, and that E. H. Johnson was duly appointed administrator of his estate, June 10, 1857; that said E. H. Johnson, as administrator aforesaid, and for and on behalf of complainant, immediately upon his appointment aforesaid, offered, in a respectful manner, to take good care of the said Elizabeth Jennings during her lifetime, in the manner required by the will; that always since the death of her husband, complainant has been ready, able and willing to take care of the said Elizabeth Jennings, and offered to take care of her in the manner required by the will.

That the said David Jennings, by his will, gave the said Elizabeth Jennings power to sell the said real estate only upon the express condition that "the said John Jennings and Thomas Jennings should fail to give her a good support." That the said Elizabeth Jennings, well knowing that said John Jennings did, after the death of the said David Jennings, and until the death of the said John Jennings, support and take good care of her, and well knowing that after the death of said John Jennings, complainant, as the widow of the said John Jennings, was able and desired and offered to continue to, support her, did, soon after the death of said John Jennings, unlawfully and forcibly expel complainant from the said premises and every part thereof, and ever since has kept complainant out of the possession of said premises and every part thereof. And that upon the 31st day of August, 1857, by warrantee deeds, did unlawfully and fraudulently convey the said one hundred acres to David B. Jennings, Thomas Jennings and Andrew Jennings—to one of them forty acres, to the others thirty acres each. That said David Jennings, Thomas Jennings and Andrew Jennings did then, each and all of them, well and fully know that said conveyances were wrongful, unlawful and fraudulent.

The bill prays that all the above parties be summoned as defendants, and required to answer the bill, and that upon a final hearing thereof, the court would order, adjudge and decree the above mentioned conveyances to be cancelled and held for naught; that complainant, by proper decree, may be placed in possession of said premises, upon the same terms that her husband possessed them, and that complainant may be allowed to take care of and support the said Elizabeth Jennings, and that she may be allowed all the rights and privileges enjoyed by her husband in his lifetime under said will; and for general relief.

A copy of the will is set out in the opinion of the court.

Appellant, who was complainant below, assigns for error the

order of the court below in sustaining the demurrer and dismissing the bill.

A. WEBSTER, for Appellant.

WILKINSON & PLEASANTS, for Appellees.

WALKER, J.  The controversy in this case arises on the construction of the will of David Jennings.  It is this:

"Know all men, that I, David Jennings, being old and infirm, knowing that my time in this state of things is short, I hereby make my last will and testament.

"*First:*—I will to my wife all my real estate and personal property, in a word, all that belongs to me, to have the disposing of in any way that will best support her while she lives; but if my sons, John and Thomas, take good care of their mother during her lifetime, they shall have the farm on which we live, between them, but if they should fail to give her a good support, she can sell the land or any part of it to support herself.  But if John and Thomas comply with these conditions, they can take possession of the land immediately after my death.  It is my will that John should have one hundred acres on the east end of the south-west quarter of section thirty-one, township nineteen, two east, and Thomas to have sixty acres on the west end of the same quarter; also forty acres of the south-east quarter of same section, which will make one hundred acres to each one; and further, what money or property may be left at my wife's death, besides the above described land and John's horses and wagon, I wish to be divided among my other children, namely: Rachel, Andrew, David, Elizabeth and Sarah.  It is also my will, that John and David B. Jennings shall be executors of the estate, to do the necessary business thereof.  Given under my hand and seal, this eighteenth day of February, one thousand eight hundred and fifty-two."

The bill avers, and the demurrer admits, that after his death, and the probate of the will, Elizabeth Jennings, resided with John Jennings, in pursuance of the provisions of the will, until the time of his death.  That complainant, the widow of John, then offered to keep and support Elizabeth, in the same manner she had been, by John, and as required by the will, but that she refused to receive such support.  That John Jennings had no children at the time of his death, but left complainant his widow, who, as his heir, under the statute, was entitled to one-half of his real estate.  That Elizabeth, after the death of John, sold and conveyed the premises in

34

controversy, to David, Thomas and Andrew Jennings, sons of the testator, and that they had full notice of all the facts. The bill prays, that this deed be vacated, and that by decree, the complainant might be put into possession of the premises, upon the same condition, in which they were held by her deceased husband, and that she be permitted to support Elizabeth Jennings, in the mode provided by the will.

The facts being admitted by the demurrer to the bill, the question is presented, whether by the provisions of this will, John Jennings took such a vested interest in the premises, as descended to his heirs at his death. This depends upon whether the condition is precedent or subsequent. If the former, then the condition must be fully performed in all of its parts before such an estate can become vested, and a want of a performance of the condition, from any cause whatever, cannot be relieved against, either at law, or in equity. See 4 Kent, 125, and the authorities cited. If the condition, however, is subsequent, and the estate vested upon the death of the testator, he leaving the condition to be subsequently performed, it is otherwise. This question can only be determined, by ascertaining the intention of the devisor, as manifested in the will. And in cases of doubt, the rules of construction require, that the entire instrument, and all of its provisions, shall be considered, to ascertain its meaning.

It is apparent from this will, that the controlling motive, in making this provision, was to secure to his wife a support during her life. This devise was evidently made to secure this object. By it he devises all of his property, real and personal, to his wife, to be at her disposal, in any mode that would best support her during her life. Had the devise stopped at this point, it would not seem that the design was to pass a fee simple estate in her, but only to create a power of sale, coupled with an interest. It would have been a power to sell all or so much as might become necessary for her support. But if any doubt existed as to the meaning of this clause, it is made clear by the last clause in the sentence, which declares, that if John and Thomas shall fail to give her a good support, "she can sell the land, or any part of it, to support herself." It then seems to have been the purpose of the testator to charge all of his estate with the support of his widow.

If John and Thomas assented to the terms of the will, which provided, that if they should support their mother during her life, then this property should become theirs. When the testator provides, that if John and Thomas comply with these conditions, they could take possession of the land

immediately after his death, he cannot mean, that they should first furnish her a support during her life, as such a condition would prevent their entering into possession until a full performance of the conditions. The word "comply" could only have been used in the sense or stead of "assent," as no other interpretation can be given to the language employed, and give this clause of the will any effect.

The intention then being to charge these premises with the support of the wife, it must remain as the primary fund, out of which, when the other means provided in the will should fail, to be subjected to sale, to effectuate the testator's intention. The provision, that if the two sons named should afford the support, that they should have the property, was only a means by which the property might be relieved from the burthen. And their assent to the terms of the will, and their entering upon the execution of the condition, vested the property in them, subject, however, to the charge imposed, from which it could only be relieved by a performance of the condition. If, after assenting to the condition in the will, John and Thomas had sold the premises thus devised to them, it would have passed subject to this charge; so, upon their death, it would have descended to their heirs or devisees, under the same burthen.

If, after their assent, and after entering upon the performance of the condition, they had at any time failed to afford to their mother the support required by the will, she would, under the power conferred by the will, have the right to sell all or any portion of the premises, for the specified purpose. Or if they had sold it, or it had descended to their heirs or devisees upon their death, she would have had the same right to sell it, if the support had been refused. By assenting to the terms of the will, and entering into the possession, and by continuing to perform the conditions of the will, and thus becoming vested with the title, liable, it is true, to be defeated, they no doubt become personally liable for the support of their mother, a refusal to afford which, would have rendered them liable to a recovery by suit. The will does not require the widow to reside with these devisees. She had the option to live with whom she pleased, and they would be liable to defray the expense. This was her right, and that was their liability. Then the persons holding the property, by purchase or by descent, would, to prevent its sale to afford the support, have to see that the support was afforded by the devisees, or pay it themselves, to prevent the widow of the testator from exercising her power of sale. But before they could be put in default, they should have a fair and reasonable

opportunity, on demand properly made, to discharge the liability.

It would seem, from the terms of this will, that it was the design of the testator, to impose an equal share of the burthen on John and Thomas, and their several shares of the real estate. And in the event of the failure of either to perform his portion of the duty, his portion of the property should be liable to sale, according to the provisions of the will. This is the only just and equitable construction that can be given to this provision of the instrument. If it were held, that a failure of one of them to comply, should defeat the devise to both, great and manifest injustice might result, such as never could have been designed by the testator. It then follows, that the portion of land devised, by this will, to John, upon his death, descended to his heirs at law, subject to a moiety of appellee's support, required by the will.

The bill alleges, that all of the purchasers had notice of, and fully knew, that the conveyance was wrongful, unlawful and fraudulent. The purchasers, to derive title, were compelled to trace it through the will, and must, therefore, have been fully apprised of complainant's rights. It is also alleged, that they had purchased fraudulently. Although this allegation is not very specific as to notice, it is believed to be sufficient to authorize the introduction of evidence, for the purpose of showing that they were chargeable with either actual or constructive notice of complainant's rights, and of the circumstances upon which her claim is founded.

The bill also alleges, that complainant had offered to support appellee according to the terms imposed by the will, and that the administrator of John Jennings had made the same offer. That both of these offers were declined. This places her in no default, and the allegations of the bill show complainant to be entitled to her share of the premises, as an heir of her husband, which is liable to be defeated by a failure to perform the conditions imposed by the will. As an heir of her husband, she would be entitled to one-half of the premises devised to her husband, after the payment of his debts. This then would render her liable to one-fourth of the expense of the support of appellee.

The decree of the court below is reversed, and the cause is remanded, with leave to defendants to file answers, and the cause to proceed to a hearing, if they shall desire to take such steps.

*Decree reversed.*